**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CHARLES W. LAHEY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Mar 28 2013, 9:18 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYRONE BELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1207-CR-393 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D03-1202-FD-203

**March 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Tyrone Bell appeals his conviction of theft, a Class D felony, and his habitual offender enhancement. Bell raises the following restated issues for our review: 1) whether the trial court erred in allowing the admission of prior bad acts evidence, and 2) whether the evidence was sufficient to satisfy the mens rea element of his theft conviction. Concluding that the admission of prior bad acts evidence was not fundamental error, and that the evidence was sufficient, we affirm.

## Facts and Procedural History

The evidence most favorable to the judgment indicates that on February 23, 2012, a checkbook belonging to Rick Miller and Julie Miller was taken from their home, without their permission, by Julie's daughter, Melissa Babbitt. Later that day, Bell went with Babbitt and another friend, Shayna Wucsina, to Meijer where Babbitt attempted to cash a check but was unable to do so.[1] Babbitt then asked Bell if he would cash a check for her and he agreed. Bell and Wucsina watched Babbitt write out two checks in the car. They went to the Teacher's Credit Union but that branch was closed, so they went to CheckSmart. Bell went inside, along with Wucsina, to cash the check made out to Wucsina, but the teller became suspicious and called Rick Miller, who informed her that he had not written such a check and that she should call the police. Police found a second check made out to Bell in the car. Bell was charged with theft, a Class D felony, and was alleged to be an habitual offender.

---

[1] While at Meijer, Wucsina and Bell went to the deli to obtain something to eat. Babbitt later told them about her failed attempt at cashing the check.

After the State rested during the jury trial, Bell moved for a directed verdict, arguing that the State did not provide evidence that he "knew" that Babbitt was not authorized to use the checks. The trial court denied the motion, finding that there was enough evidence to submit the issue to the jury. The jury returned a verdict of guilty on the theft charge and Bell admitted to the habitual offender enhancement. The trial court sentenced Bell to two years for the theft and enhanced his sentence by three years for being an habitual offender for a total sentence of five years. Bell now appeals. Additional facts will be provided as necessary.

<u>Discussion and Decision</u>

I. Admissibility of Evidence

A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. <u>Packer v. State</u>, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), <u>trans. denied</u>. We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. <u>Id.</u> An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. <u>Id.</u>

B. Prior Bad Acts Evidence

During trial, the following colloquy took place during the direct examination of Julie Miller by the State:

> Q: Did Melissa have permission to get into that filing cabinet?
> A: No.
> Q: Did any of her associates or friends or guests, have permission to get in there?
> A: No, ma'am.
> Q: Do you allow people into your home?
> A: No, ma'am.

3

Q: Why is that?
A: For any of our children, any of our six grown children, they all know not to bring . . . my husband is so paranoid that someone would take something that belongs to him. They all know you don't bring strangers into our home.
If we're there, that's one thing. But if we're not there, that's completely different.
Q: And is Melissa specifically allowed to have people over?
A: Especially Melissa can't have people over.
Q: And why is that?
A: Melissa tends to run with a . . . not a very good crowd of people. Most of them have a criminal history or--
[Defense counsel]: Objection.
The Court: That's overruled at this point.
The witness: --or a drug problem.

Transcript at 114-15. Bell contends that Julie Miller's statement regarding the criminal history or drug problem of those her daughter "tends to run with" was improper character evidence and that its admission was an abuse of discretion.

Indiana Evidence Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." The rationale behind this evidentiary rule is to avoid the jury making the "forbidden inference" that the defendant had a criminal propensity and therefore committed the charged conduct. Thompson v. State, 690 N.E.2d 224, 233 (Ind. 1997).

Here, because the evidence indicated that Bell was Melissa's friend, Julie Miller's comment could lead the jury to believe that he had a criminal propensity and therefore engaged in the charged crime of theft. However, Bell did not make a Rule 404(b) objection during trial. "The uttering of the single word, 'Objection' with no accompanying statement of legal grounds on which the objection is based" is not

4

sufficient to preserve an issue on appeal.[2] Riley v. State, 427 N.E.2d 1074, 1077 (Ind. 1981). This issue has therefore been waived unless Bell can show fundamental error. See Vermillion v. State, 978 N.E.2d 459, 463 (Ind. Ct. App. 2012). Fundamental error occurs only when the alleged error is a blatant violation of basic principles, the harm or potential for harm as a result of the error is substantial, and the resulting error denies the defendant fundamental due process. Id.

The comment made by Julie Miller was the only evidence of prior bad acts admitted at trial, and was only a general reference to the people "Melissa tends to run with," not to Bell in particular. In fact, Julie Miller testified that she had never met Bell. Thus, the prior bad acts evidence admitted here was not so prejudicial it made a fair trial impossible. See Wilson v. State, 931 N.E.2d 914, 920 (Ind. Ct. App. 2010) (holding that the improper admission of the defendant's driving record was not fundamental error, in part, because it was the only evidence relating to the defendant's character), trans. denied; cf. Rhodes v. State, 771 N.E.2d 1246, 1256 (Ind. Ct. App. 2002) (finding fundamental error when the "flood" of prior misconduct evidence, ranging from defendant's driving convictions, alcohol problems, and history of domestic violence to the legitimacy of his child and the circumstances surrounding his divorce, made a fair trial impossible), trans. denied. The admission of Julie Miller's comment was not fundamental error.

---

[2] Even if Bell had properly preserved the issue for appeal, the analysis would not end there. Indiana courts engage in a two-step process to determine whether Rule 404(b) evidence is admissible. Hicks v. State, 690 N.E.2d 215, 221 (Ind. 1997) ("(1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403"). Further, some errors in the admission of evidence are harmless and do not warrant reversal. See, e.g., Edwards v. State, 862 N.E.2d 1254, 1259 (Ind. Ct. App. 2007) (improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence), trans. denied; Williams v. State, 782 N.E.2d 1039, 1047 (Ind. Ct. App. 2003) (improper admission of evidence is harmless error if the erroneously admitted evidence is merely cumulative of other evidence in the record), trans. denied.

## II.  Sufficiency of Evidence

### A.  Standard of Review

Our standard of review for sufficiency claims is well-settled.  We do not reweigh the evidence or assess witness credibility for ourselves.  Boggs v. State, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), trans. denied.  We consider only the probative evidence and reasonable inferences supporting the verdict.  Id.  It is not necessary that the evidence overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.  Id.  We will affirm the conviction unless no reasonable finder of fact could find the elements of a crime proven beyond a reasonable doubt.  Id.

### B.  Evidence of "Knowing"

Bell was convicted of theft in violation of Indiana Code section 35-43-4-2(a).  The State was required to prove beyond a reasonable doubt that Bell knowingly or intentionally exerted unauthorized control over the Millers' checks, with the intent to deprive them of any part of their value or use.  Bell argues that there was insufficient evidence to prove that he "knowingly" exerted unauthorized control over the checks.  "Knowingly" is defined as a person engaging in conduct while "aware of a high probability that he is doing so."  Ind. Code § 35-41-2-2(b).

The jury was instructed that, to find Bell guilty, it must find beyond a reasonable doubt that Bell knowingly or intentionally exerted unauthorized control over the checks.  The jury found that the State had met this burden, and that finding is entitled to deference on appeal.  Franklin v. State, 715 N.E.2d 1237, 1240-41 (Ind. 1999).  Bell points to the lack of testimony that he knew the checks were stolen or that Babbitt was unauthorized to

use them.  However, direct evidence is not required; knowledge may be inferred from circumstantial evidence.  Berridge v. State, 168 Ind. App. 22, 340 N.E.2d 816, 821 (1976).  Circumstantial evidence is sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt.  Green v. State, 808 N.E.2d 137, 138 (Ind. Ct. App. 2004).

The evidence here indicated that Bell saw Babbitt write out the checks and sign her mother's name.  In addition, there was evidence that Bell knew that Babbitt was unable to cash a check earlier that day at Meijer.  The fact that Bell knew that Babbitt had been unable to cash one of the checks supports the inference that Bell knew Babbitt was unauthorized to use them.  Thus, there was sufficient evidence to prove that Bell knowingly exerted unauthorized control over the Millers' checks and committed theft.

## Conclusion

The admission of prior bad acts evidence was not fundamental error and there was sufficient evidence to prove the knowing element of Bell's theft conviction.  We therefore affirm.

Affirmed.

MAY, J., and PYLE, J., concur,