Tyler LAWSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–0306–CR–295.

Court of Appeals of Indiana.

Feb. 11, 2004.

Transfer Denied April 14, 2004.

**238**

Stephen Gerald Gray, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, J.

Appellant-defendant Tyler Lawson appeals his convictions for Illegal Possession of Alcohol[1] and Illegal Consumption of Alcohol,[2] both class C misdemeanors. Specifically, Lawson argues that the trial court erred when it allowed a police officer to testify that Lawson admitted that he was eighteen years of age. Moreover, Lawson claims that the corpus delicti rule was not satisfied because no evidence of his age—other than his admission—was presented. Additionally, Lawson claims that the trial court erred in admitting the police officer's statements about the labels on the two beer bottles found in close proximity to Lawson. Finally, Lawson alleges that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. Although the trial court did not err with respect to any of these issues, we sua sponte observe that Lawson's convictions for both possession and consumption of alcohol under these specific facts violate double jeopardy principles. Thus, we affirm the consumption conviction but reverse Lawson's conviction for illegal possession of an alcoholic beverage.

### FACTS

The facts most favorable to the judgment reveal that on September 29, 2002, Indiana State Excise Police Officer John E. Barchak was on duty at the Verizon

---

1. Ind.Code § 7.1–5–7–7.          2. *Id.*

Wireless Music Center in Noblesville. Officer Barchak observed a van with persons moving about inside and looking through the blinds. This activity arose his suspicion, so Officer Barchak approached the front passenger. The front passenger was holding a can of beer but appeared to be younger than twenty-one years of age. Officer Barchak identified himself as a police officer and instructed the van occupants to remain in place.

With the assistance of another officer, Officer Barchak opened the van's side door. Three persons were seated therein, Lawson among them. Officer Barchak saw Lawson place a longneck, brown beer bottle on the floor. Because the occupants had alcoholic beverages, Barchak asked the occupants their names, ages, and dates of birth. Lawson was the last person questioned, and Officer Barchak detected the odor of alcohol on Lawson's breath. Officer Barchak asked Lawson his name, age, and date of birth, and Lawson stated that he was eighteen. Officer Barchak recovered a bottle of Bud Light and a bottle of Budweiser from an area close to Lawson, though Officer Barchak could not testify at trial as to whether the bottles contained a substance or were empty. Tr. p. 42. Lawson was then arrested and charged with the above offenses.

At a bench trial commencing May 1, 2003, Officer Barchak testified over Lawson's objection that Lawson stated that he was eighteen. Lawson's objection was based on the fact that the requisite Miranda[3] warnings had not been given to him. Officer Barchak also stated that the bottles' labels read "Bud Light" and "Budweiser." Lawson objected on grounds that the best evidence rule was violated because the labels were not introduced into evidence and, thus, he could not effectively cross-examine Officer Barchak. The trial court overruled Lawson's objection. At the close of the trial, Lawson was convicted on both counts and subsequently sentenced to a sixty-day suspended sentence. Lawson now appeals.

## DISCUSSION AND DECISION

### I. Admission of Lawson's Statements

Lawson claims that the statement regarding his age was erroneously admitted by the trial court. Specifically, Lawson argues that he was not given the requisite *Miranda* warnings and that the corpus delicti rule required independent evidence of his age.

#### A. Miranda Warnings

Lawson argues that Officer Barchak interrogated him while in custody without first telling him that he did not have to answer the officer's questions. Specifically, Lawson claims that Officer Barchak's questions were aimed at gathering "evidence of suspected criminal activity in which age is a material element." Appellant's Br. p. 7.

We note that a defendant is entitled to the procedural safeguards of *Miranda* only if subject to custodial interrogation. *White v. State*, 772 N.E.2d 408, 412 (Ind.2002). "Interrogation" is defined as "express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *Id.*

In addressing Lawson's claims, we note that in *Deckard v. State*, the defendant was stopped by a police officer while driving the victim's vehicle. 670 N.E.2d 1, 5 (Ind.1996). The officer asked Deckard his name and age. At trial, Deckard objected

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to the officer's testimony regarding his age on grounds that he had not been given the *Miranda* warnings before the officer began obtaining information. Our supreme court held that no error occurred because statements regarding one's name and age "constitute admissible responses to general investigatory questioning." *Id.*

Here, the questioning was similar to that conducted by the officer in *Deckard*. Officer Barchak asked Lawson and the other van occupants their ages when he became suspicious. While Lawson points out that "age is a material element" of the crime with which he was charged, Appellant's Br. p. 7, this is of no moment, as our supreme court has stated that asking for a person's age is "general investigatory questioning," not interrogation aimed at obtaining incriminating information. *Id.* Thus, Lawson's claim must fail.

### B. Corpus Delicti Rule

Lawson argues that the State improperly established an element of the offense when it offered the statement he made to Officer Barchak to show that he was less than twenty-one years of age. Lawson claims that this violates the corpus delicti rule that requires independent proof—not solely a defendant's admission—of each element of a crime.

Indiana's "corpus delicti rule holds that a crime may not be proven based solely on a *confession*." *Malinski v. State*, 794 N.E.2d 1071, 1086 (Ind.2003)(emphasis added). The "admission of a *confession* requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct." *Id.* (quoting *Workman v. State*, 716 N.E.2d 445, 447 (Ind.1999)(emphasis added)).

Here, a confession never occurred. Indeed, as stated by trial counsel, Lawson

"never admitted that he touched, handled, drank, or consumed any kind of beer at all." Tr. p. 47. When a confession is not at issue, the corpus delicti rule does not apply. *See Malinski*, 794 N.E.2d at 1086. Thus, Lawson's claim must fail.

### II. Best Evidence Rule

Lawson goes on to claim that the State violated the best evidence rule. Specifically, Lawson argues that the trial court erred when it permitted Officer Barchak to testify that the two bottles seized from the van were labeled as "Budweiser" and "Bud Light" without presenting the actual bottle labels because the labels were writings, and without the original labels he could not effectively cross-examine Officer Barchak.

The best evidence rule is codified as Indiana Evidence Rule 1002, which reads in relevant part:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute.

We have never had the occasion to determine whether the label on a chattel is subject to the best evidence rule. The question to consider is whether a chattel with a label is properly termed "a writing." Dean McCormick advocates an analysis of factors by the trial court before concluding whether a chattel with an inscription is under the purview of the best evidence rule:

> [T]he judge shall have discretion to apply the [best evidence] rule to inscribed chattels or not in light of such factors as [1] the need for precise information as to the exact inscription, [2] the ease or difficulty of production, and [3] the simplicity or complexity of the inscription.

Charles T. McCormick, *McCormick on Evidence* § 234 (4th ed.1992).

The U.S. Court of Appeals for the Fifth Circuit dealt with the application of the best evidence rule when a writing is attached to a chattel in *U.S. v. Duffy*, 454 F.2d 809 (5th Cir.1972). In *Duffy*, the defendant was charged with theft and transportation of a vehicle. A shirt belonging to Duffy was found in the trunk, and the shirt had a laundry tag with the letters "D-U-F." *Id.* at 811. At trial, Duffy objected to testimony regarding the laundry tag and asked that the shirt itself—with attached tag—be produced. The *Duffy* court discussed the purposes behind the best evidence rule, including the need for precision in documents such as wills and deeds, the "substantial hazard of inaccuracy" when attempting to copy a writing, and the "special risk of error" in attempting to orally describe the contents of a writing. *Id.* at 812. The *Duffy* court then found that when an object bearing an inscription exists, the trial court may treat that object as either a writing or a chattel, giving due regard to the reasons behind the rule. *Id.* Specifically, the *Duffy* court noted that because the writing—"D-U-F"—was simple, there would be little danger of inaccuracy. *Id.*

In our view, the McCormick and *Duffy* court approaches are appropriate and strike a balance between the need for accuracy and simple common sense. Here, the question was whether the bottles were labeled "Budweiser" or "Bud Light." Thus, the need for accuracy was far less than that which is necessary to determine the amount of an inheritance, for example. Moreover, a beer label usually has a stylized graphic, and such graphics are easier to recall than is paragraph text. Amanda Westland, *Visual Aids Not First Aid,* Presenters University *at* http://www.presen-tersuniversity.com/courses_visu-al_aids_visuals_not_firstaid.php (last visited December 16, 2003). Thus, remembering a beer brand is not a complex affair.[4] The second McCormick factor—the ease or difficulty of production—does call into question why the beer bottles in Lawson's immediate area were not introduced at trial. On balance, however, Officer Barchak's testimony as to the brands of beer was not barred by the best evidence rule and, thus, the trial court committed no error.

### III. Sufficiency of the Evidence

Lawson claims that his convictions for possession and consumption of an alcoholic beverage may not stand because the State presented insufficient evidence to establish the commission of either offense. Specifically, Lawson notes that "[t]here was no testimony [that] the bottles contained any type of liquid at all and the officer testified that they may have been empty." Appellant's Br. p. 11. Moreover, Lawson cites *Turner v. State,* 749 N.E.2d 1205 (Ind.Ct. App.2001), for the proposition that the smell of alcohol on one's breath by itself is insufficient to prove the existence of an alcoholic beverage.

In addressing Lawson's claim that the evidence was insufficient to support his convictions, we neither reweigh the evidence nor assess the credibility of the witnesses. *Brasher v. State,* 746 N.E.2d 71, 72 (Ind.2001). Rather, we look to the evidence most favorable to the verdict and the reasonable inferences therefrom. *Id.* This court will affirm the conviction if there is probative evidence from which a reasonable person could have found the defendant guilty beyond a reasonable doubt. *Id.*

---

4. Indeed, the point of branding is to make a product easier to identify.

Lawson was charged with two counts of violating Indiana Code section 7.1–5–7–7(a), which reads, in relevant part:

It is a Class C misdemeanor for a minor to knowingly:

(1) possess an alcoholic beverage;

(2) consume it; or

(3) transport it on a public highway when not accompanied by at least one (1) of his parents or guardians.

An "alcoholic beverage" is further defined as "a liquid or solid that: (1) is, or contains, one-half percent (0.5%) or more alcohol by volume; (2) is fit for human consumption; and (3) is reasonably likely, or intended, to be used as a beverage." Ind. Code § 7.1–1–3–5:

We have held that circumstantial evidence can establish the elements of consumption of an alcoholic beverage. *Turner*, 749 N.E.2d at 1208. While *Turner* was a case dealing with illegal *consumption* of an alcoholic beverage, its rationale is applicable to instances where a defendant is charged with unlawful *possession* of an alcoholic beverage as well, especially because both possession and consumption are prohibited by the same statute. *See* I.C. § 7.1–5–7–7. In *Turner*, the police officer testified that Turner "emitted a strong odor of alcoholic beverages," had bloodshot eyes, and slurred his speech. *Id.* at 1209. Turner challenged his conviction, and we held that "[w]hile any of these factors alone might not have supported the verdict, when considered together they provide sufficient evidence that the beer Turner consumed contained at least .5% alcohol by volume." *Id.*

### A. Possession of an Alcoholic Beverage

■ Lawson claims that no evidence was presented that an alcoholic beverage even existed. Specifically, Lawson notes that Officer Barchak testified that the beer bottles found in the van could have been empty.

Here, Officer Barchak testified that Lawson's breath smelled of alcohol. Tr. p. 11. Officer Barchak also testified that he saw empty beer bottles near Lawson's person. Tr. p. 23, 41. The alcohol on Lawson's breath and placement of the empty bottles raised a logical inference that Lawson possessed alcohol at some point. Thus, sufficient evidence was presented that Lawson illegally possessed an alcoholic beverage. However, as discussed in Part IV of this opinion, this conviction must be set aside because it violates double jeopardy principles.

### B. Illegal Consumption of Alcohol

■ Lawson maintains that his conviction for illegal consumption of alcohol may not stand because the State presented insufficient evidence. Specifically, Lawson cites *Turner* for the proposition that one cannot be found guilty of illegal consumption of an alcoholic beverage if the only evidence is that the defendant's breath smelled of alcohol.

Lawson correctly points out that, unlike the defendant in *Turner*, he did not have bloodshot eyes or slurred speech. However, two beer bottles were found within Lawson's reach. Tr. p. 23, 41. Moreover, Lawson's breath smelled of alcohol. Tr. p. 11. This evidence was sufficient to sustain the inference that Lawson consumed an alcoholic beverage. Thus, sufficient evidence was presented to convict Lawson.

### IV. Double Jeopardy

Though not raised by Lawson, we sua sponte address the issue of double jeopardy. Article I, Section Fourteen of the Indiana Constitution states that "[n]o person shall be put in jeopardy twice for the same offense." Our supreme court has employed Justice Sullivan's analysis in

holding that five situations will violate Article I, Section Fourteen of the Indiana Constitution. *Guyton v. State,* 771 N.E.2d 1141, 1143 (citing *Richardson* v. *State,* 717 N.E.2d 32, 56 (Ind.1999) (Sullivan, J., concurring)). The *Guyton* court noted that the following instances violate Indiana's double jeopardy clause: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished; (2) conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished; (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished; (4) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished; and (5) conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. *Id.* An example of the second type of violation is when a defendant is convicted of battery when the identical touching was the basis of a previous battery conviction. *Id.*

■ Here, the State had no direct evidence that Lawson consumed an alcoholic beverage. Instead, Officer Barchak testified that Lawson's breath smelled of alcohol. Tr. p. 11. This evidence by itself would not be sufficient to convict Lawson. *Turner,* 749 N.E.2d at 1209. However, Officer Barchak also testified that empty bottles were found close to Lawson. Tr. p. 23, 41. The testimony regarding Lawson's breath, coupled with the location of the beer bottles, created an inference that Lawson consumed an alcoholic beverage. However, this was the same evidence used to show that Lawson *possessed* an alcoholic beverage. In essence, Lawson was convicted twice for the same behavior. This is the "type II" violation of double jeopardy principles criticized in *Guyton. Id.* Thus, Lawson's conviction for possession may not stand.

## CONCLUSION

In light of the issues addressed, we conclude that Lawson's statements regarding his age were appropriately admitted at trial, that Officer Barchak's testimony regarding the beer bottle labels did not violate the best evidence rule, and that the evidence presented was sufficient to convict Lawson of both illegal possession and consumption of an alcoholic beverage. However, because the *same inference* from the circumstances presented here was used to convict Lawson on both counts, Lawson's conviction for unlawful possession must be reversed.

The judgment of the trial court is affirmed in part and reversed in part.

NAJAM, J., and MAY, J., concur.